**CT** CORPORATION
A WoltersKluwer Company

**Service of Process
Transmittal**
07/11/2008
CT Log Number 513625662

|||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||

**TO:**   Randolph Wiseman
Nationwide Mutual Insurance Company
One Nationwide Plaza 1-38-11
Columbus, OH 43215-2220

**RE:**   **Process Served in Tennessee**

**FOR:**   Nationwide Property and Casualty Insurance Company (Domestic State: OH)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Delouise Randle and Lionel Shorter, Pltfs. vs. Nationwide Property & Casualty Insurance Company, Dft.<br>*Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Letter, Summons, Return Form, Complaint, Oath, Exhibit(s) |
| **COURT/AGENCY:** | Shelby County Chancery Court, TN<br>Case # CH-08-1187-1 |
| **NATURE OF ACTION:** | Insurance Litigation - Policy benefits claimed for house and personal property damage caused by fire on June 9, 2007 |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Knoxville, TN |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 07/11/2008 postmarked on 07/09/2008 |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days, not including the day of service |
| **ATTORNEY(S) / SENDER(S):** | David N. Arnold<br>Cordts & Gulley, PLLC<br>6263 Poplar Avenue, Suite 1132<br>Memphis, TN 38119<br>901-684-2270 |
| **REMARKS:** | Process served/received by the Insurance Commissioner on 07/02/08, and mailed to CT Corporation System on 07/11/08. |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 07/11/2008, Expected Purge Date: 07/16/2008<br>Image SOP - Page(s): 60 |
| **SIGNED:**<br>**ADDRESS:**<br><br><br>**TELEPHONE:** | C T Corporation System<br>800 S. Gay Street<br>Suite 0221<br>Knoxville, TN 37929-9710<br>865-342-3522 |

Page 1 of  1 / DE

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.



STATE OF TENNESSEE
**DEPARTMENT OF COMMERCE AND INSURANCE**
500 JAMES ROBERTSON PARKWAY
NASHVILLE, TN 37243-1131

July 08, 2008

Nationwide Prop & Casualty Ins. Co.
800 S. Gay Street, Ste 2021, % C T Corp.
Knoxville, TN  37929-9710
NAIC # 37877

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
7006 2760 0002 9676 2134
Cashier # 3996

Re: Delouise Randle & Lionel Shorter   V.   Nationwide Prop & Casualty Ins. Co.

Docket # Ch-08-1187-1

To Whom It May Concern:

We are enclosing herewith a document that has been served on this department on your behalf in connection with the above-styled matter.

I hereby make oath that the attached Complaint was served on me on July 02, 2008 by Delouise Randle & Lionel Shorter pursuant to Tenn. Code Ann. § 56-2-504 or § 56-2-506. A copy of this document is being sent to the Chancery Court of  Shelby County, TN.

Brenda C. Meade
Designated Agent
Service of Process

Enclosures

cc: Chancery Court Clerk
    Shelby County
    140 Adams Street, Rm 308
    Memphis, Tn  38103

Service of Process 615.532.5260

(CHANCERY/CIRCUIT) COURT OF TENNESSEE
140 ADAMS AVENUE   MEMPHIS, TENNESSEE 38103
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

SUMMONS IN CIVIL ACTION

NO. _CH-08-1187-1_ AD DAMNUM  $479,693.00 _____ AUTO ☐ OTHER ☒

DELOUISE RANDLE and LIONEL SHORTER              3185 BLUE BONNET ROAD, MEMPHIS, TN 38118
_____          Home Address
_____          _____
                                                  Business Address
_____ PLAINTIFF _____              _____
vs.                                               Business Address
NATIONWIDE PROPERTY & CASUALTY                    Home Address
INSURANCE COMPANY                                 _____
_____          Business Address
_____ DEFENDANT _____

TO THE DEFENDANT(S): COMMISSIONER OF INSURANCE _____
500 JAMES ROBERTSON PARKWAY _____
NASHVILLE, TN 37243-1131 _____

You are hereby summoned and required to defend a civil action by filing your answer with the Clerk of the Court and

serving a copy of your answer to the Complaint on _____ CORDTS & GULLEY, PLLC _____ Plaintiff's

attorney, whose address is 6263 POPLAR AVENUE, SUITE 1132, MEMPHIS, TN 38119 , telephone _901-684-2270_ within

THIRTY (30 ) DAYS after this summons has been served upon you, not including the day of service.  If you fail to do so, a

judgment by default may be taken against you for the relief demanded in the Complaint.

JIMMY MOORE, Clerk

**DEWUN R. SETTLE** ~~KENNY ARMSTRONG,~~ Clerk & Master

TESTED AND ISSUED _June 27_ , 20_08_       By _B. Reynolds_ _____ , D.C.

TO THE DEFENDANT(S):

NOTICE: Pursuant to Chapter 919 of the Public Acts of 1980, you are hereby given the following notice:
Tennessee law provides a four thousand dollar ($4,000) personal property exemption from execution or seizure to satisfy a judgment. If
a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under
oath, of the items you wish to claim as exempt with the Clerk of the Court. The list may be filed at any time and may be changed by you
thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or
garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed. These
include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain
such apparel, family portraits, the family Bible and school books. Should any of these items be seized, you would have the right to
recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

COST BOND

I hereby acknowledge and bind myself for the prosecution of this action and payment of all costs not to exceed $500.00 m
this court which may at any time be adjudged against the plaintiff in the event said plaintiff shall not pay the same.

Witness My Hand this _____ day of _____ ,20 _____

Certification when applicable

_____
Surety

I, KENNY ARMSTRONG, Clerk & Master          I, JIMMY MOORE, Clerk of the Circuit
of the Chancery Court, Shelby County,        Court, Shelby County, Tennessee, certify
Tennessee, certify this to be a true and     this to be a true and accurate copy as filed
accurate copy as filed this_____    **I hereby certify that this is a true copy** is _____
KENNY ARMSTRONG, Clerk & Master **of original instrument filed in my office** JIMMY MOORE, Clerk

By: _____ , D.C. This _27th_ day of _June 2008_ , D.C.
**DEWUN R. SETTLE, CLERK & MASTER**
BY _B. Reynolds_ D.C. & M.

CK# 4630 for $15.00 attached

Front

## RETURN ON SERVICE OF SUMMONS

I HEREBY CERTIFY THAT I HAVE SERVED THE WITHIN SUMMONS:

By delivering on the _____ day of _____, 20 ____ at _____ M.

a copy of the summons and a copy of the Complaint to the following defendents

_____

Mark Luttrell, Sheriff

By _____

Deputy Sheriff

### PRIVATE PROCESS SERVER

I HEREBY CERTIFY THAT I HAVE SERVED THE WITHIN SUMMONS:

By delivering on the _____ day of _____, 20____ at _____M. a copy of the

summons and a copy of the Complaint to the following defendants

COMMISSIONER OF INSURANCE

(PLEASE PRINT THE FOLLOWING)

| | |
|---|---|
| Private Process Server | Address |
| | Phone |
| Company | Signature |
| Other manner of service: | |

I hereby certify that I have NOT served this Summons on the within named defendant(s) _____

because _____ is / are not to be found in this County for the

following reason(s): _____

Mark Luttrell, Sheriff

This _____ day of _____, 20 ____.   By _____

Deputy Sheriff

NO. _CH-08-1187_ D.

IN THE
(CHANCERY CIRCUIT)
COURT
OF TENNESSEE
FOR THE THIRTIETH
JUDICIAL DISTRICT AT MEMPHIS

SUMMONS IN CIVIL ACTIONS

DELOUISE RANDLE and LIONEL
SHORTER
PLAINTIFF

VS.

NATIONWIDE PROPERTY &
CASUALTY INS. CODEFENDANT

Came to hand

DAVID N. ARNOLD
Attorney for Plaintiff

Tel. No. _901-280-2270_

IN THE CHANCERY COURT OF TENNESSEE
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS, SHELBY COUNTY

DELOUISE RANDLE and
LIONEL SHORTER,

     Plaintiff,

vs.

NATIONWIDE PROPERTY & CASUALTY
INSURANCE COMPANY,

     Defendant.

NO. CH-08-1187-1
Div. ___

FILED
SHELBY COUNTY
CHANCERY COURT
JUN 2 7 2008
DEWUN R. SETTLE, C & M
TIME: _____ BY: _____

---

## COMPLAINT

---

To the Chancellors of the Chancery Court for the Thirtieth Judicial District:

    Come now the Plaintiffs, Delouise Randle and Lionel Shorter, and sue the Defendant,

Nationwide Property & Casualty Insurance Company, and for cause of action respectfully shows

to the court:

### JURISDICTION AND VENUE

I.

    Plaintiff Lionel Shorter is a resident citizen of Memphis, Shelby County, Tennessee, who

currently resides at 3185 Blue Bonnet Road, Memphis, Shelby County, Tennessee 38118.

Plaintiff Delouise Randle is a resident citizen of Mississippi, who currently resides at 6546

Rosebank/Mt. Olive Road, Lexington, Mississippi 39095.

II.

    That Defendant, Nationwide Property & Casualty Insurance Company, is and has been at

all times relevant to this action a licensed insurance company doing business in Tennessee

subject to service of process through the Commissioner of Insurance and Commerce at 500

James Robertson Parkway, Nashville, Tennessee, 37243-1131. To the best of Plaintiff's

information and belief, Nationwide Property & Casualty Insurance Company is an Ohio

corporation, domiciled in Ohio, with business headquarters located at One Nationwide Plaza,

Columbus, OH 43215-2220.

## FACTS

### III.

That Plaintiffs owned certain real property and dwelling house located at 3185 Blue

Bonnet Road, Memphis, Tennessee, on June 29, 2007, and Plaintiffs continue to own said

property.

### IV.

That the Plaintiffs owned personal property on June 29, 2007, worth in excess of One

Hundred Nineteen Thousand Nine Hundred Twenty Three Dollars and 00/100 ($119,123.00)

located in said house, and Plaintiffs continued to own said personal property until the destruction

of said house and personal property by fire, as hereinafter shown.

### V.

That the Defendant, in consideration of monies paid by Plaintiffs, issued and delivered to

the Plaintiff Delouise Randle a policy of insurance upon said house, being number 63 41 HO

328825 (hereinafter referred to as the "insurance policy"), which insured the house and personal

property therein against the loss of damage caused by fire for a period of one year from October

16, 2006. A copy of the insurance policy is attached hereto as Exhibit A.

2

VI.

That said Nationwide Insurance Policy number 63 41 HO 328825 insured the house and personal property therein against the loss or damage caused by fire in the following amounts: One Hundred Seventy One Thousand Three Hundred Nineteen Dollars and 00/100 ($171,319.00) under Coverage A – Dwelling; Seventeen Thousand One Hundred Thirty Two Dollars and 00/100 ($17,132.00) under Coverage B – Other Structures; One Hundred Nineteen Thousand Nine Hundred Twenty Three Dollars and 00/100 ($119,923.00) under Coverage C – Personal Property; One Hundred Seventy One Thousand Three Hundred Nineteen Dollars and 00/100 ($171,319.00) under Coverage D – Loss of Use. Further coverage is provided under the various provisions and options of said policy, which are more fully and specifically described by the policy itself, attached hereto as Exhibit A.

VII.

That after the delivery of said policy, and before the expiration thereof, on or about June 29, 2007, the dwelling located at 3185 Blue Bonnet Road, Memphis, Tennessee 38118, and the personal property contained therein, was accidentally burned and totally destroyed.

VIII.

That following the fire the Plaintiffs forthwith gave notice to Defendant, filed a claim for the proceeds of said homeowner's insurance policy, submitted the proofs required of them by said insurance policy, and in all particulars complied with the contract.

IX.

On November 9, 2007, Plaintiffs were sent a letter denying their claim for damages and retroactively terminating the Plaintiff's homeowner's policy. A copy of the letter is attached hereto as Exhibit B.

3

X.

That prior to the date of the fire, Plaintiff Lionel Shorter suffered the loss of a tractor due to theft. This claim was also denied in the letter from Nationwide dated November 9, 2007

## **BREACH OF CONTRACT**

XI.

Plaintiffs hereby reiterate and incorporate by reference the facts as set forth in paragraphs III-X as the basis for this cause of action.

XII.

That the aforementioned insurance policy formed a legal and binding agreement between the Plaintiff and the Defendant, which obligated Defendant to pay Plaintiffs for loss or damage caused by fire, including, but not limited to, the following amounts, pursuant to the terms of said policy, which is exhibited herewith as Exhibit A: One Hundred Seventy One Thousand Three Hundred Nineteen Dollars and 00/100 ($171,319.00) under Coverage A – Dwelling; Seventeen Thousand One Hundred Thirty Two Dollars and 00/100 ($17,132.00) under Coverage B – Other Structures; One Hundred Nineteen Thousand Nine Hundred Twenty Three Dollars and 00/100 ($119,923.00) under Coverage C – Personal Property; One Hundred Seventy One Thousand Three Hundred Nineteen Dollars and 00/100 ($171,319.00) under Coverage D – Loss of Use.

XIII.

That the insurance policy was breached by the Defendant by failing to pay Plaintiffs for loss or damage caused by fire to Plaintiffs' real and personal property, and by failing to comply with the terms of the insurance policy.

XIV.

4

That as a result of the Defendant's breach of the agreement between the two parties hereto, Plaintiffs have been damaged in that Plaintiffs have suffered the loss of their real and personal property without compensation, as well as the loss of use of said personal property, and have incurred additional expenses as a result of said loss and Defendant's breach.

## BAD FAITH

### XV.

Plaintiffs hereby reiterate and incorporate by reference the facts as set forth in paragraphs III-VII as the basis for this cause of action.

### XVI.

That Defendant, as an insurance company doing business in Tennessee, is subject to Tennessee's bad-faith statute, set forth in T.C.A. §56-7-105, which states as follows:

> "Bad-faith failure to pay promptly.  The insurance companies of this state, and foreign insurance companies and other persons or corporations doing an insurance or fidelity bonding business in this state, in all cases when a loss occurs and they refuse to pay the loss within sixty (60) days after a demand has been made by the holder of the policy or fidelity bond on which the loss occurred, shall be liable to pay the holder of the policy or fidelity bond, in addition to the loss and interest thereon, a sum not exceeding twenty-five percent (25%) on the liability for the loss" (T.C.A. 56-7-105[a]).

### XVII.

That Defendant has failed and refused to pay the loss within sixty (60) days of said demand by denying Plaintiffs' claim for and Defendant's denial of the claim is not in good faith.

### XVIII.

That Defendant's failure to pay the Plaintiffs has inflicted expense, loss, and injury upon the Plaintiffs, and, accordingly, Plaintiffs are entitled to recover, in addition to the amount of the insured loss and interest thereon, an amount equal to twenty-five percent (25%) of the liability for the loss, pursuant to T.C.A. §56-7-105.

5

## TENNESSEE CONSUMER PROTECTION ACT

### XIX.

Plaintiffs hereby reiterate and incorporate by reference the facts as set forth in paragraphs III-VII as the basis for this cause of action.

### XX.

That Tennessee's Consumer Protection Act, as set forth in T.C.A. 47-18-101 et seq., applies to claims handling procedures in insurance disputes.

### XXI.

That Defendant's conduct in handling the Plaintiffs' policy and claim was unfair and deceptive in that Defendant held out in its policy that when premiums are paid in a timely manner, claims would be paid; Defendant then failed and refused to fully pay Plaintiffs as obligated under the terms of the policy, which clearly shows intent not to honor the terms of Plaintiff's policy.

### XXII.

That Defendant's said unfair and deceptive conduct is in violation of the Tennessee Consumer Protection Act as set forth in T.C.A. 47-18-101 et seq.

### XXIII.

That Defendant's deceptive practices have inflicted expense, loss, and injury upon the Plaintiffs in that Plaintiffs have suffered the loss of their real and personal property without full compensation, as well as the loss of use of said real and personal property, and have incurred additional expenses as a result of Defendant's deceptive practices.

### XXIV.

That Plaintiff is entitled to treble damages for Defendant's deceptive and unfair practices, pursuant to T.C.A. §47-18-109.

### XXV.

That Plaintiffs are entitled to reasonable attorney fees and costs of this action pursuant to T.C.A. §47-18-109.

### **PRAYERS FOR RELIEF**

### XXVI.

The premises considered, Plaintiffs respectfully pray:

1. That proper process issue to the State Commissioner of Insurance for the Defendant Nationwide Property & Casualty Insurance Company.

2. That Defendant, Nationwide Property & Casualty Insurance Company be determined to have breached its policy;

3. That Defendant be estopped to deny the full force and effect of said homeowner's insurance policy;

4. That Defendant be determined to have acted in bad faith in denying Plaintiffs' claim;

5. That Defendant be determined to have acted in an unfair and deceptive manner in violation of the Tennessee Consumer Protection Act as set forth in T.C.A. 47-18-101, et seq.;

6. That a judgment be entered for Plaintiffs against the Defendant in the amount of Four Hundred Seventy Nine Thousand Six Hundred Ninety Three Dollars and 00/100

7

($479,693.00), pursuant to their insurance policy limits as described in Paragraph VI, or other such amount as the Court should deem just, plus prejudgment interest, together with the costs of this cause;

    7.   That a judgment be entered for Plaintiffs against the Defendant for the amount equal to twenty-five percent (25%) of the liability for the loss, pursuant to T.C.A. §56-7-105.

    8.   That a judgment be entered for Plaintiffs against the Defendant for treble damages for the Defendant's unfair and deceptive actions, pursuant to T.C.A. §47-18-109.

    9.   That the Plaintiffs be awarded reasonable attorney fees and costs.

    10.   That the Court order Defendant to pay to Plaintiffs all additional amounts payable under the provisions of said insurance policy when they become due.

    11.   That the Plaintiffs may have such further and other relief as they may be entitled to.

                  Respectfully Submitted,

                  Cordts & Gulley, PLLC

                  David N. Arnold, BPR# 024294
                  Attorney for Plaintiffs
                  6263 Poplar Avenue, Suite 1132
                  Memphis, TN 38119
                  (901) 684-2270

# OATH

STATE OF TENNESSEE
COUNTY OF SHELBY

Lionel Shorter, being first duly sworn, makes oath that he has read the foregoing Complaint, knows the contents thereof, and that the same is true and correct to the best of his knowledge, information and belief; that this Complaint is made for the causes mentioned therein; and that he is justly entitled to the relief sought.

Lionel Shorter

SWORN TO AND SUBSCRIBED BEFORE ME this 25th day of June, 2008.

Katherine Hill
NOTARY PUBLIC

My Commission Expires: 03-16-01

STATE OF TENNESSEE
COUNTY OF SHELBY

Delouise Randle, being first duly sworn, makes oath that he has read the foregoing Complaint, knows the contents thereof, and that the same is true and correct to the best of his knowledge, information and belief; that this Complaint is made for the causes mentioned therein; and that he is justly entitled to the relief sought.

Delouise Randle

SWORN TO AND SUBSCRIBED BEFORE ME this 25th day of June, 2008.

Katherine Hill
NOTARY PUBLIC

My Commission Expires: 03-16-11

9

# EXHIBIT A

## REQUEST FOR CERTIFIED/NON-CERTIFIED POLICY

Date: _____03/18/2008 _____

To: RSC Certifieds/Raleigh Service Center Document Control
**Lnotes ID RSCCERT**

From: __Mike Richardson   richarm3_____

Re:  Policy #: _328825_   Policyholder: __Delourise Randle_____
       Claim #: _6341HO 328825 06292007 01___   State: ___Tennessee_____

REASON FOR REQUEST: ___Large fire loss, arson, denied to insured.  Insured has an attorney
and he is requesting a certified copy of the policy.___

( ) ___ Certified copy(s) of Declaration Page as of (date) _____ .

(x ) _1__ Certified copy(s) of policy as of (date) _____06/29/2007_____ .
         (Includes declaration, endorsements, jacket, etc.)

( ) ___ Certified copy(s) of:                                    *Dec 4-23-07*
         Expiration Notice/Termination Notice/
         Cancellation Notice/Cancellation Letter
         Firm Mail List/Proof of Mailing (Personal Lines only)

( ) ___ Certified copy(s) of cancellation to lienholder/mortgage and Firm Mail List.

( ) ___ Copy of original notice to Department of Motor Vehicles (if not available from DMV,
         reconstruct copy).

( )___ Copy of Declaration Page (not certified) as of (date)

( )____ Copy of policy (not certified) as of (date) _____ .
         (Includes declaration, endorsements, jacket, etc.)

## *IMPORTANT!*

RETURN TO:       _____**Mike Richardson**_____

**MAILING** OR **INTEROFFICE** ADDRESS: 3340 Players Club Parkway, Suite
**300_____**
Return documents  ( ) Interoffice
                ( ) Priority          __**Memphis, TN  38125**_____

PHONE NUMBER OF REQUESTOR:       ____**501-258-3725**_____ .

FAX NUMBER OF REQUESTOR:         ____**866-339-9874**_____

DISBURSEMENT CODE               ____**633321**_____

"I certify that the attached document, comprising of 40 pages are true and correct copies for policy number 63 41 HO 328 825 as of 06-29-07."

_Mary Clegg_                           3-19-08
Signature                              Date

Personal Lines Processing Clerk
919-881-3308



**HOMEOWNER POLICY
DECLARATIONS**
Non-Assessable

Page 1 of 3

These Declarations are a part of the policy named above and identified by policy number below. They supersede any Declarations issued earlier. Your Homeowner Policy will provide the insurance described in this policy in return for the premium and compliance with all applicable policy provisions. See policy for details regarding the other coverages and additional coverage options.

**Policy Number:**
63 41 HO 328825

**Issued:**
APR 23, 2007

**Policyholder:**
**(Named Insured)**
DELOUISE RANDLE
3185 BLUE BONNET
MEMPHIS TN 38118-6716

**Policy Period From:**

OCT 16, 2006  to OCT 16, 2007 but only if the required premium for this period has been paid, and only for annual renewal periods if premiums are paid as required. Each period begins and ends at 12:01 A.M. standard time at the Residence Premises.

---

**Change Effective Date:**
MAR 12, 2007

**The Following Change(s) Have Been Made To Your Policy:**

This revised Declarations reflects recent changes made to your Insurance Policy.

**Residence Premises Information:**

DELOUISE RANDLE
3185 BLUE BONNET
MEMPHIS
TN  38118-6716

ONE FAMILY
MASONRY VENEER DWELLING
YEAR OF CONSTRUCTION 1958

PROTECTION CLASS 2
RATED PROTECTION CLASS 2
IN CITY OR LISTED AREA
WITHIN 1000 FT FROM HYDRANT
WITHIN 5 MILES FROM FIRE DEPT
FIRE DISTRICT 0006
PROTECTION TERRITORY 046

## SECTION I

| Property Coverages | Limits Of Liability | Deductible: $500 ALL PERILS |
|---|---|---|
| COVERAGE-A-DWELLING | $   171,319 | In case of a loss under Section I, we cover only that part of each loss over the deductible stated. |
| COVERAGE-B-OTHER STRUCTURES | $    17,132 | |
| COVERAGE-C-PERSONAL PROPERTY | $   119,923 | |
| COVERAGE-D-LOSS OF USE | $   171,319 | |

## SECTION II

| Liability Coverages | Limits Of Liability | |
|---|---|---|
| COVERAGE-E-PERSONAL LIABILITY FOR EACH OCCURRENCE: PROPERTY DAMAGE AND BODILY INJURY | $   300,000 | |
| COVERAGE-F-MEDICAL PAYMENTS TO OTHERS EACH PERSON | $     1,000 | |

H5300

# HOMEOWNER POLICY DECLARATIONS

## OTHER COVERAGES/OPTIONS APPLICABLE

See Policy or Endorsements for details regarding the Other Coverages and Options that apply to your policy.

| Other Coverages | Limits of Liability |
|---|---|
| INFLATION PROTECTION | APPLIES |
| BOECKH INDEX 0596.0 | |
| BIOLOGICAL DETERIORATION/DAMAGE CLEAN UP | $ 5,000 |
| FIRE DEPARTMENT SERVICE CHARGE | $ 500 |
| CREDIT CARD - FORGERY | $ 1,000 |

| Options Applicable | |
|---|---|
| OPTION-J-EXTENDED REPLACEMENT COST | APPLIES |
| PERSONAL PROPERTY | |
| OPTION-L-PROTECTIVE DEVICE CREDIT | APPLIES |
| FIRE EXTINGUISHERS | |
| DEADBOLT LOCKS ON ALL EXTERIOR ENTRYWAYS | |
| ALERTING FIRE/BURGLARY ALARM SYSTEM | |
| OPTION-O-ORDINANCE OR LAW 10% OF COVERAGE A | APPLIES |
| OPTION R-BROAD WATER BACKUP | $ 5,000 |
| WATER BACKUP DEDUCTIBLE  $500 | |

## PREMIUM SUMMARY

| Premium Based On | Premium Amount |
|---|---|
| POLICY PREMIUM | $ 1,085.00 |
| WATER BACKUP | $ 20.00 |
| **Annual Premium** | $ 1,105.00 |

**Annual Premium Includes Discounts For:**

CLAIM FREE
HOME PROTECTIVE DEVICE

## FORMS and ENDORSEMENTS MADE PART OF POLICY

HO 41-A               Homeowners Policy
H-6114                Sinkhole Collapse Endorsement

## ADDITIONAL INTERESTS

**FIRST MORTGAGEE**

WASHINGTON MUTUAL
BANK FA
ISAOA ATIMA
PO BOX 100564
FLORENCE SC 29501-0564



# HOMEOWNER POLICY DECLARATIONS

Non-Assessable
Page 3 of 3

**Policy Number:**
63 41 HO 328825

**Issued:**
APR 23, 2007

**Policyholder:**
(Named Insured)
DELOUISE RANDLE

**Policy Period From:**
OCT 16, 2006 TO   OCT 16, 2007

Issued By: NATIONWIDE PROPERTY & CASUALTY INSURANCE CO.
Countersigned At: RALEIGH, NC
Prior Declaration Issued: NOV 30, 2006

Home Office — Columbus, Ohio
By: JANICE DENISE EDWARDS

## IMPORTANT PHONE NUMBERS

Nationwide 24-Hour Claims Number: 1-800-421-3535

For QUESTIONS About Your Policy, Call Your NATIONWIDE AGENT: JANICE DENISE EDWARDS
901-346-2550

For Hearing Impaired: TTY 1-800-622-2421

Nationwide Regional Office: 1-800-835-7975



# sinkhole collapse coverage —
# amendatory endorsement

**Please attach this important addition to your policy.**

It is agreed that the policy is amended as follows:

The Section I — Property Exclusion "earth movement and volcanic eruption," which excludes loss by "earth sinking" is amended to exclude loss by "earth sinking other than sinkhole collapse."

Sinkhole collapse means:

1) actual physical damage to covered property arising out of, or caused by sudden settlement or collapse of the earth supporting such property; and

2) only when such settlement or collapse results from subterranean voids created by the action of water on limestone or other similar rock formations.

This policy does not insure against loss caused by abandonment of the property covered.

All other provisions of this policy apply.

This endorsement is issued by the company shown in the Declarations page as the issuing company.

### NATIONWIDE INSURANCE COMPANIES
### Home Office: Columbus, Ohio 43215-2220

H-6114

# *Table of Contents*       *Homeowners Policy*

**INSURING AGREEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A1
**DEFINITIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .A1-A2
**COVERAGES:**

**Section I - Property Coverages** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . B1-B6
       Coverage A - Dwelling
       Coverage B - Other Structures
       Coverage C - Personal Property
       Coverage D - Loss of Use
       Additional Property Coverages
       **Perils Insured Against** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . C1-C2
       **Property Exclusions** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . D1-D3
       **Property Conditions** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . E1-E3

**Section II - Liability Coverages** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . G1-G3
       Coverage E - Personal Liability
       Coverage F - Medical Payments to Others
       Additional Liability Coverages
       **Liability Exclusions** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . H1-H4
       **Liability Conditions** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . J1

**POLICY COVERAGE OPTIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . K1-K7

**GENERAL POLICY CONDITIONS**
How Your Policy May Be Changed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L1
Concealment or Fraud . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L1
Renewal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L1
Non-Renewal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L1
Cancellation During Policy Period . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L1
Policy Transfer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L2
Subrogation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L2
Death . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L2
Additional Insured - Non Occupant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L2
Optional Payment of Premium in Installments . . . . . . . . . . . . . . . . . . . . . . . . . . L3
Non-Sufficient Funds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L3
Dividends. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L3

**MUTUAL POLICY CONDITIONS**
Nationwide Mutual Insurance Company
Nationwide Mutual Fire Insurance Company . . . . . . . . . . . . . . . . . . . . . . . . . . . L3

Includes copyrighted material of Insurance Services Offices, with its permission.
Copyright, Insurance Services Office, 1975, 1977.

HO-41-A

# Insuring Agreement

We will provide the insurance described in this policy, which includes the Declarations and attached endorsements or schedules, in return for the premium and fees, and compliance with all the policy provisions.

The applicable limits of liability and optional coverages you have chosen are shown on the Declarations. This policy applies only to loss which occurs while the policy is in force.

# Definitions

Certain words and phrases used in this policy are defined as follows:

1. "WE", "US" and "OUR" refer to the company shown on the Declarations as the issuing company.

2. "YOU" and "YOUR" refer to the named **insured** shown in this policy who resides at the **residence premises**. These terms also mean your spouse who resides at the same **residence premises**.

3. "BUSINESS" includes trade, profession, occupation, or employment including self-employment, performed on a full-time, part-time, or temporary basis. **Business** also includes any occasional **business** pursuits of an **insured**, including ownership of rental property. It includes home care services regularly provided to a person or persons, other than **insureds** or **insureds'** relatives, for which there is monetary or other compensation. A mutual exchange of home care services is not considered compensation. Exceptions, if any, are noted on the Declarations.

4. "INSURED" means you and the following if residents of your household at the **residence premises**:
   a) your relatives.
   b) any other person under age 21 and in the care of you or your relatives.

5. "INSURED LOCATION" means:
   a) the **residence premises**.
   b) the part of any other premises, structures, and grounds used by you as a residence and shown in the policy; also any of these acquired by you during the policy period for your use as a residence.
   c) a premises you use with premises defined in 5. a) or 5. b).
   d) a part of a premises, not owned by an **insured**, where an insured is temporarily living.
   e) vacant land, other than farm land, owned by or rented to an **insured**.
   f) land, other than farm land, owned by or rented to an **insured** on which a one or two-family dwelling is being built as a residence for an **insured**.
   g) cemetery plots or burial vaults of an **insured**.
   h) a part of a premises rented on occasion to an **insured** for purposes other than **business**.

6. "MOTOR VEHICLE" means:
   a) a motorized land vehicle or conveyance, including motorized bicycles or mopeds, designed for travel on public roads or subject to motor vehicle registration.
   b) a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration.
   c) any vehicle while being towed by or carried on a vehicle defined in 6. a) or 6. b).

7. "RESIDENCE PREMISES" means the one, two, three or four-family dwelling, other structures and grounds located at the mailing address shown on the Declarations unless otherwise indicated.

8. "AIRCRAFT" means any machine or device capable of atmospheric flight, except models.

*Insuring Agreement* _____

9.  "ACTUAL CASH VALUE" means the amount it would cost to repair or replace covered property with material of like kind and quality, less allowance for physical deterioration and depreciation, including obsolescence.

10. "FOUNDATION" means a building's substructure including substructural walls, i.e., basement walls, crawl space walls, etc.

11. "BIOLOGICAL DETERIORATION OR DAMAGE" meaning damage or decomposition, breakdown, and/or decay of manmade or natural material due to the presence of fungi, algae, lichens, slime, mold, bacteria, wet or dry rot, and any by-products of these organisms, however produced. Fungi as used above include, but are not limited to:  yeasts, mold, mildew, rust, smuts, or fleshy fungi such as mushrooms, puffballs and coral fungi.

Other words are also defined. All defined words are in bold print.



# Section I
# Property Coverages

## Coverage Agreements

### COVERAGE A — DWELLING

We cover:

1. the dwelling on the residence premises used mainly as your private residence, including attached structures and attached wall-to-wall carpeting.

2. materials or supplies on or adjacent to the residence premises for use in construction, alteration or repair of:
   a) the dwelling; or
   b) Coverage B — Other Structures.

We do not cover land or the replacement, rebuilding, restoration, stabilization or value of such land.

### COVERAGE B — OTHER STRUCTURES

We cover other structures on the residence premises. They must be separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line, or similar connection are considered other structures.

We do not cover:

1. other structures used in whole or in part for business purposes.

2. other structures rented or held for rental to anyone, unless used solely as a private garage.

3. land or the replacement, rebuilding, restoration, stabilization or value of such land.

### COVERAGE C — PERSONAL PROPERTY

We cover personal property owned or used by an insured at the residence premises. At your request, we will cover personal property owned by others. It must be on the part of the residence premises occupied by an insured. This extension of coverage does not increase the limit of liability.

**Our limit of liability** for personal property while away from the **residence premises** is 10 percent of the limit of liability for Coverage C or $1,000, whichever is greater. This 10 percent limitation does not apply to personal property:

1. removed from the residence premises due to a covered loss;

2. in transit to and from, or while in a newly acquired principal residence for 30 days. The 30 days start right after you begin to move the property; or

3. stored in a commercial storage facility up to 180 days. The 180 days start when you begin to move the property. A commercial storage facility does not include a self-storage unit.

**SPECIAL LIMITS OF LIABILITY.** Certain property is subject to special limits which do not increase the personal property limits of liability. The special limit, shown below for each numbered category, is the total limit for each loss for all property in that category.

*Section I — Property Coverages*

The following special limits apply only to theft losses:

1. $1,000 for jewelry, watches, furs, and precious and semi-precious stones.
2. $1,000 for guns, including accessories.
3. $1,000 for cameras (film, digital or video), including accessories. It does not include cameras used in business.
4. $2,500 for silverware, silver-plated ware, goldware, gold-plated ware, and pewterware.
5. $1,000 for tools not used in **business**. This limit does not apply to lawn and garden tools used to service the residence premises.

The following special limits apply to all covered losses:

6. $200 for money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins, stored value cards, smart cards, gift certificates and medals.
7. $1,000 for securities, accounts, bills, deeds, documents, evidences of debt, letters of credit, notes other than bank notes, passports, stamps and tickets.
8. $3,000 for computers, including hardware and software accessories, operating software, application software or other similar software, which can be replaced with like kind and quality on the retail market. This includes electronic storage media such as, but not limited to, tapes or diskettes. Stored data is not covered.
9. $500 for business property on the **residence premises** except computers including their hardware and software described above.
10. $1,000 for watercraft and outboard motors, including trailers, furnishings and equipment.
11. $1,000 for utility type trailers not used with watercraft.
12. $1,000 for manuscripts, regardless of the medium.

**PROPERTY NOT COVERED. We do not cover:**

1. articles separately described and specifically insured in this or any other insurance.
2. animals, birds or fish.
3. house or travel trailers.
4. **motor vehicles** or all other motorized land conveyances including the following, whether furnished by the manufacturer or an individual:
   a) their parts or equipment, whether attached to or separated from the **motor vehicle** or motorized land conveyance; or
   b) accessory equipment; or
   c) any device or instrument, including accessories or antennas, for the transmitting, receiving, recording or reproduction of sound or picture which can be operated by the power from the electrical system of the **motor vehicle** or motorized land conveyance. Tapes, discs, reels, cassettes or similar items, including carrying cases for any of these, while in a motorized land vehicle shall not be considered accessory equipment. The most we will pay is $200 in any one loss, regardless of the number of such items. The loss must be caused by a covered peril.

   We do cover vehicles or conveyances not subject to motor vehicle registration which are:
   a) used solely to service the **insured's** residence;
   b) designed to assist the handicapped; or
   c) a motorized golf cart while being operated to or from, or on the premises of a golf course.

5. aircraft and parts.
6. property of roomers, boarders, and other tenants. Personal property, at the **residence premises**, belonging to roomers and boarders related to an **insured** is covered.

B2

7. property in an apartment regularly rented or held for rental to others by an **insured**.

8. property rented or held for rental to others away from the **residence premises**.

9. **business** property away from the **residence premises**.

## COVERAGE D — LOSS OF USE

We cover, subject to the coverage limit which is the total limit, all of the following:

1. **Additional Living Expense**. If a covered loss requires **you** to leave the **residence premises**, we will pay the required increase in living expenses **you** incur to maintain **your** normal standard of living. Payment will be for the shortest time required to repair or replace the premises; or, if **you** permanently relocate, for the shortest time required for **your** household to settle elsewhere. Payment will not exceed the limit of liability shown on the Declarations or 12 months, whichever occurs first. This period of time is not limited by the end of the policy period; and

2. **Fair Rental Value**. If a loss covered under this section requires occupants to leave that part of the **residence premises** rented to others or held for rental, we will pay its fair rental value. Payment will be for the shortest time required to repair or replace this part of the premises. This does not include expense that does not continue while the part of the **residence premises** is uninhabitable. Payment will not exceed the limit of liability shown on the Declarations or 12 months, whichever occurs first. This period of time is not limited by the end of the policy period; and

3. **Prohibited Use**. If a civil authority prohibits **your** use of the residence **premises** because of direct damage to neighboring premises by a peril insured against in this policy, we will pay the resulting loss, for up to two weeks while use is prohibited, for:
   a) Additional Living Expense; and
   b) Fair Rental Value.

We do not cover loss or expense due to cancellation of a lease or agreement.

This coverage does not apply to an **insured's business**, whether conducted on or off any **insured location**.

No deductible applies to this coverage.

# *Additional Property Coverages*

These additional property coverages are subject to the policy deductible except as noted. In no event will the deductible be applied more than once to any one loss.

1. **Debris Removal**. We will pay reasonable expense **you** incur removing debris of covered property, if the peril causing the loss is covered. This includes debris of trees that cause damage to covered property or covered structures, or that obstruct access to covered structures if such access is necessary to repair or replace the structure. We will pay only to move away from, or off of, covered property or covered structures, the debris of trees that cause damage to covered property or restrict access. An additional five (5) percent of the limit of liability for the damaged property will be available when the amount payable for the property loss plus the debris removal expense exceeds the limit of liability.

2. **Live Tree Debris Removal**. In the event of a loss, we will also pay the reasonable expense **you** incur for the removal of live tree debris from the **residence premises**, that does not cause damage to covered property or covered structures. The most we will pay is $500, regardless of the number of

trees requiring removal, for any one loss. Loss must be the result of a Coverage C Perils Insured Against. This is an additional amount of coverage.

3. **Reasonable Repairs.** We will pay reasonable cost **you** incur for necessary repairs made solely to protect covered property from further damage, if the peril causing the loss is covered. This expense is included in the limit of liability applying to the damaged property.

4. **Trees, Shrubs, Plants, and Lawns.** We cover trees, shrubs, plants, or lawns on the **residence premises** for loss caused by the following perils:   fire and lightning; explosion; riot and civil commotion; **aircraft;** vehicles not owned or operated by a resident of the **residence premises;** vandalism or malicious mischief; collapse of a building; or, theft. Liability is limited to five (5) percent of the Coverage A limit of liability for all trees, shrubs, plants and lawns. It is limited to $500 for one tree, shrub or plant. This coverage may increase the limit of liability.

   We do not cover property grown for **business** purposes.

5. **Fire Department Service Charge.** We will pay up to the amount stated on the Declarations for **your** liability under contract or agreement for customary fire department charges. This applies when the charges result from the fire department being called to save or protect covered property from a covered peril. No deductible applies to this coverage.

6. **Property Removed.** Covered property removed from a premises because it is in danger from a covered peril is covered for direct loss from any cause. The property is covered while being removed and for 30 days while removed. After 30 days the property is covered for direct loss from a peril insured against. This does not change the coverage limit.

7. **Credit Card, Electronic Fund Transfer Card, Access Device and Forgery Coverage.** We will pay up to the amount stated on the Declarations for:

   a) the legal obligation of an **insured** to pay theft or unauthorized use of credit cards (including Electronic Fund Transfer Cards or Access Devices) issued to or registered in an **insured's** name. However, we do not cover use by a resident of **your** household, a person entrusted with the credit card (Electronic Fund Transfer Card or Access Device), or any person if an **insured** has not complied with all terms and conditions under which the credit card (Electronic Fund Transfer Card or Access Device) is issued.

   b) loss to an **insured** caused by forgery or alteration of a check or negotiable instrument.

   c) loss to an **insured** through good faith acceptance of counterfeit United States or Canadian paper currency.

   All losses resulting from a series of acts committed by any one person or groups of persons or in which any one person or groups of persons is concerned or implicated is considered one loss. This is regardless of the period of time over which the acts occur.

   We do not cover loss arising out of the **business** pursuits, or dishonesty of an **insured**.

   We do not cover loss arising out of identity theft or identity fraud including a covered act as outlined in subsections a), b), or c) of this section.

   No deductible applies to this coverage.

   We may make any investigation and settle any claim or suit as we decide is appropriate. Our obligation to defend a claim or suit ends when the amount we pay for the loss equals **our** limit of liability.

   If a claim is made or a suit is brought against an **insured** for liability under the Credit Card, Electronic Fund Transfer Card, Access Device and Forgery Coverage, we will provide defense at **our** expense by counsel of our choice.

   We may defend at **our** expense an **insured** or an **insured's** bank against a suit for the enforcement of payment under the forgery coverage.

   **Our** duty to defend does not apply to identity theft or identity fraud.

8.  **Inflation Protection Coverage.** If the Declarations show this coverage applies, we will adjust the limit of liability on the Declarations for Section I — Coverages. The limit of liability will change as the appropriate index, shown on the Declarations, changes.

    We will compare the latest available index to the index as of the effective date of this policy.   We will adjust the limit of liability by the percentage change in the index. It is further agreed that the premium for this policy at the next anniversary date shall be for the adjusted limits of liability.

    If you request a change in the dwelling limit of liability, the effective date of this coverage will be amended to the effective date of that change.

    This coverage will not reduce our limit of liability during the current policy period below that for which premium has been paid.

9.  **Consequential Loss.** We cover **insured** personal property in a building at the **residence premises** for loss due to temperature change resulting from power interruption. There must be damage to the **residence premises** caused by a covered peril.

10. **Refrigerated Property.** If a power interruption occurs, off the **residence premises**, we will pay up to a maximum of $500 for loss of contents in a freezer or refrigerator due to temperature changes. **You** must use all reasonable means to protect the covered property from damage or this coverage is void.

11. **Lock Replacement.** We will pay up to $100 to replace the exterior door locks on **your residence premises** with deadbolt locks or to rekey the lock cylinders of existing deadbolt locks, whichever is less. This coverage applies only if the keys to your **residence premises** are stolen.

    No deductible applies to this coverage.

12. **Collapse.** We cover direct physical loss to covered property described in Coverages A, B and C caused by the complete **collapse** of a building structure or any part of a building structure. **Collapse** means an abrupt falling down or caving in of a building or other structure or any part of a building or other structure with the result that it cannot be occupied for its intended purpose. A building or other structure or part of a building or other structure is not considered in a state of **collapse** if:

    a)  it is standing but in danger of falling down or caving in;
    b)  it is standing but has separated from any other part of the building;
    c)  it is standing even if it shows signs of settling, cracking, shifting, bulging, sagging, bowing, bending, leaning, shrinkage, or expansion.

    The **collapse** must be sudden and accidental and caused by one or more of the following:

    a)  one of the Coverage C — Personal Property perils insured against;
    b)  hidden decay of a supporting or weight bearing building structural member;
    c)  hidden insect or vermin damage of a supporting or weight bearing building structural member;
    d)  weight of:

        (1) contents, equipment, animals or people; or
        (2) rain, ice, sleet or snow which collects on the roof; or

    e)  defective material or methods used in the construction, repair or remodeling or renovation if the **collapse** occurs in the course of work being done.

    The presence of any decay, insect or vermin damage must be unknown to an **insured** prior to **collapse**.

    Loss to an awning, fence, patio, swimming pool, underground pipe, flue, drain, cesspool, septic tank, **foundation**, retaining wall, bulkhead, pier, wharf, or dock is not included under items b), c), d), or e) unless the loss is a direct result of the **collapse** of a building.

    The limit of liability applying to the covered property is not increased by this coverage.

*Section I — Property Coverages* _____

13. **Household Supplies.** We will pay up to a maximum of five (5) percent of the Coverage A — Dwelling coverage limit for direct physical loss to property described in Coverages A and B arising out of any interior or exterior presence, use, discharge, dispersal, release, migration, seepage, leakage, or escape of household supplies on the residence premises. Household supplies includes items currently in use or in your possession at the residence premises, in normal household quantities such as household cleaning supplies, pesticides, and other similar items.

Section I — **Property Exclusion 1.j)** does not apply to any loss covered under this Additional Property Coverage, Household Supplies. In no event, however, will we ever cover:

  a) loss arising out of materials containing asbestos, lead, formaldehyde, fuel or petroleum products; or

  b) any fee, assessment or expense of any governmental authority; or

  c) loss arising out of household supplies possessed or used:

    (1) for **business purposes;**

    (2) for **illegal purposes;**

    (3) by **c**ontractors; or

    (4) on driveways or walkways.

14. **Biological Deterioration or Damage Clean Up and Removal.** In the event that a covered cause of loss results in **biological deterioration or damage** to property covered under Coverages A, B, and C, we will pay, up to the amount shown on the Declarations, for:

  a) the cost to clean up, remove and dispose of the **biological deterioration or damage** to covered property;

  b) the cost to tear out and replace any part of the building or other covered property needed to gain access to the **biological deterioration or damage;**

  c) the cost of testing which is performed in the course of clean up and removal of the **biological deterioration or damage** from the residence premises; and

  d) additional living expenses you may incur, as outlined under Coverage D, that results from items a), b) or c) above.

The coverage amount shown on the Declarations for this Additional Property Coverage is the most we will pay for all loss or costs payable under this Additional Coverage. Such costs are payable only if you report the **biological deterioration or damage** to us within 180 days of having first discovered the **biological deterioration or damage.**

The covered cause of loss that causes or results in **biological deterioration or damage** to covered property must have occurred during the policy period.

This is an additional amount of coverage.

# *Perils Insured Against*
(Section I)

## *Covered Causes of Loss*

### COVERAGE A — DWELLING and
### COVERAGE B — OTHER STRUCTURES

We cover accidental direct physical loss to property described in Coverages A and B except for losses excluded under Section I — Property Exclusions.

### COVERAGE C — PERSONAL PROPERTY

We cover accidental direct physical loss to property described in Coverage C caused by the following perils except for losses excluded under Section I — Property Exclusions:

1. fire or lightning.

2. windstorm or hail.

   Direct loss caused by rain, snow, sleet, sand or dust driven through roof or wall openings made by direct action of wind, hail, or other insured peril is covered. This peril includes loss to:
   a) rowboats and canoes inside or outside a building.
   b) other watercraft and outboard motors, including their trailers, furnishings, and equipment, while inside a fully enclosed building.

3. explosion.

4. riot or civil commotion.

5. aircraft, missiles propelled and spacecraft.

6. vehicles.

7. sudden and accidental damage from smoke. This does not include loss due to smoke from farm or industrial operations.

8. vandalism and malicious mischief.

   This peril does not include loss to property on the residence premises if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling under construction is not considered vacant.

9. theft, including attempted theft. Loss of property from a known location when it is likely the property was stolen is covered. Loss of precious or semi-precious stones from their settings is not covered. This peril does not include loss caused by any theft:
   a) committed by an insured.
   b) in or to a dwelling under construction, or of materials and supplies for use in the construction, until the dwelling is completed and occupied.
   c) of money, securities, stamps, jewelry, watches, gems, articles of gold, silver, or platinum from any part of a residence premises usually occupied solely by an insured while rented to other than an insured.

This peril does not include loss caused by theft that occurs away from the **residence premises** of:

a) property while at any other residence owned by, rented to, or occupied by an **insured**, except while an **insured** is temporarily living there. Property of an **insured** student is covered at a residence away from home if the student has been there within 45 days prior to the loss.

b) trailers and campers.

c) watercraft and outboard motors, including their furnishings and equipment.

10. **falling objects.** This peril does not include loss to:

a) property in a building, unless the roof or an exterior wall of the building is first damaged by a falling object.

b) the falling object itself.

11. **weight of ice, snow, or sleet** which causes damage to property in a building.

12. **accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance. This peril does not include loss:

a) caused by or resulting from water that backs up from outside the dwelling's plumbing system and enters through sewers or drains; or water entering or overflowing a sump pump, sump pump well or other system designed to remove subsurface water drained from the **foundation** area except as may be provided elsewhere in this policy or by endorsement.

b) due to continuous or repeated seepage or leakage of water, steam or moisture which occurs over a period of time and results in deterioration, corrosion, or rust.

c) due to freezing except as provided by the peril of freezing.

d) to the system or appliance from which the water, steam or moisture escaped.

13. **accidental electrical damage** to electrical appliances, devices, fixtures and wiring. This peril does not include loss to transistors and tubes including picture tubes.

14. **sudden and accidental tearing apart, cracking, bursting, burning or bulging of:**

a) a steam or water heating system.

b) a fire protective sprinkler system.

c) an air conditioning system.

d) an appliance for heating water.

Freezing is not covered under this peril.

15. **freezing** of a plumbing, heating, air conditioning, or automatic fire protective sprinkler system or of a household appliance. This peril does not include loss on the **residence premises** while unoccupied, vacant or under construction unless **you** have used reasonable care to:

a) maintain heat in the building; or

b) shut off the water supply and drain the system and appliances of water.

# *Property Exclusions*

1. We do not cover loss to any property resulting directly or indirectly from any of the following. Such a loss is excluded even if another peril or event contributed concurrently or in any sequence to cause the loss.

   a) Earth Movement and Volcanic Eruption. Earth movement means: earth movement due to natural or unnatural causes, including mine subsidence; earthquake; landslide; mudslide; earth shifting, rising or sinking. Volcanic eruption means: eruption; explosion; or discharge from a volcano.

   Resulting direct loss by fire, explosion, theft or breakage of glass which is part of the building is covered.

   b) Water or damage caused by water-borne material. Loss resulting from water or water-borne material damage described below is not covered even if other perils contributed, directly or indirectly to cause the loss. Water and water-borne material damage means:

   (1) flood, surface water, waves, tidal waves, overflow of a body of water, spray from these, whether or not driven by wind.

   (2) water or water-borne material which:

   (a) backs up through sewers or drains from outside the dwelling's plumbing system; or

   (b) overflows a sump pump, sump pump well or other system designed to remove subsurface water or water-borne material from the **foundation** area.

   (3) water or water-borne material below the surface of the ground, including water or water-borne material which exerts pressure on, seeps or leaks through a building, sidewalk, driveway, **foundation**, swimming pool, or other structure.

   Resulting direct loss by fire, explosion, or theft is covered.

   c) Neglect, meaning neglect of the **insured** to use all reasonable means to save and preserve property at the time of and after a loss, or when property is endangered by a covered peril.

   d) War or Warlike Acts. This includes insurrection, rebellion or revolution. Discharge of a nuclear weapon is considered a warlike act even if accidental.

   e) Nuclear Hazard, meaning any nuclear reaction, discharge, radiation, or radioactive contamination, all whether controlled or not or however caused, and any consequence of any of these. Loss caused by nuclear hazard is not considered loss caused by fire, smoke, or explosion, whether these perils are specifically named in or otherwise included as a covered peril in Section I.

   f) Increased Hazard, meaning any loss occurring while hazard is increased by a means within the control and knowledge of an **insured**.

   g) Intentional Acts, meaning loss resulting from an act committed by or at the direction of an **insured** that may reasonably be expected to result from such acts, or is the intended result from such acts. Intentional acts include criminal acts. Such acts exclude coverage for all **insureds**.

   h) Ordinance or Law, meaning enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure.

   i) Collapse, except as provided by Section I — Additional Property Coverages — **Collapse**.

    j)   Contamination or Pollution, meaning any interior or exterior presence or use, discharge, dispersal, release, migration, seepage, leakage, or escape of:

       (1) solid, liquid, gaseous, or thermal irritants or contaminants, except smoke arising solely from a hostile fire or the sudden and accidental discharge from a fireplace or furnace;

       (2) vapors, soot, fumes, acids, alkalis, toxic chemicals, toxic liquids, toxic gases, or waste;

       (3) fuel oil and other petroleum products; or

       (4) any other waste materials or other irritants, contaminants or pollutants.

    k)   Loss Assessments, unless, optional loss assessment coverage is purchased; and then only up to the limit of liability shown for that optional coverage.

    l)   Government Acts, meaning any loss caused by seizure, destruction, or confiscation by order of any government or public entity.

       Loss caused by acts ordered by any government or public entity at the time of a fire to prevent its spread is covered if the loss caused by fire would be covered under this policy.

    m)  **Biological deterioration or damage,** except as provided by Section I — Additional Property Coverages — **Biological Deterioration or Damage Clean Up and Removal.**

2.   We do not cover loss to any property resulting directly or indirectly from the following if another excluded peril contributes to the loss:

    a)   A fault, weakness, defect or inadequacy in the:

       (1) specifications, planning, zoning;

       (2) design, workmanship, construction, materials;

       (3) surveying, grading, backfilling;

       (4) development or maintenance;

       of any property on or off the **residence premises,** whether intended or not.

    b)   Acts or decisions of any person, group, organization or governmental body, whether intentional, negligent, wrongful or without fault. This includes the conduct or failure to act or decide by any of the aforementioned.

    c)   Weather conditions, if contributing in any way with an exclusion listed in paragraph 1. of this Section.

3.   We do not cover loss to property described in Coverages A and B resulting directly from any of the following:

    a)   freezing of a plumbing, heating, air conditioning or automatic fire protection sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing.

       This exclusion applies only while the dwelling is vacant, unoccupied or being constructed unless you have used reasonable care to:

       (1) maintain heat in the building; or

       (2) shut off the water supply and drained the system and appliance of water.

    b)   freezing, thawing, pressure or weight of water, snow or ice, whether driven by wind or not, to a:

       (1) fence, pavement, patio or swimming pool;

       (2) **foundation,** retaining wall, or bulkhead; or

       (3) pier, wharf or dock.

   c) theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is completed and occupied.

   d) vandalism and malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling under construction is not considered vacant.

   e) continuous or repeated seepage or leakage of water or steam over a period of time from a heating, air conditioning or automatic protective sprinkler system; household appliance; or plumbing system that results in deterioration or rust. Continuous or repeated seepage or leakage from, within, or around any shower stall, shower tub, tub installation or other plumbing fixture, including their walls, ceilings or floors, is also excluded.

   If loss caused by water or steam is not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair or replace the system or appliance. We do not cover loss to the system or appliance from which the water or steam escaped.

   f)  (1) wear and tear, marring, deterioration;

      (2) inherent vice, latent defect, mechanical breakdown;

      (3) smog, rust;

      (4) smoke from agricultural smudging or industrial operations;

      (5) release, discharge, or dispersal of contaminants or pollutants;

      (6) settling, cracking, shrinking, bulging or expansion of pavements, patios, **foundations**, **walls**, floors, roofs or ceilings;

      (7) birds, vermin, rodents, insects or domestic animals. Resulting breakage of glass constituting part of a covered building is covered;

      (8) root growth, movement or action;

      (9) mismatch of color between undamaged material and new material used to replace faded, weathered or oxidized damaged material; or

      (10) mismatch between undamaged material and new material used to repair or replace damaged material due to outdated, obsolete or discontinued products.

   If any of items f)(1) through (8) cause water to escape from a plumbing, heating, air conditioning or fire protective sprinkler system or household appliance, we cover loss caused by the water not otherwise excluded. We also cover the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which the water escaped.

Under exclusions 3.a) through 3.f), any loss that follows is covered unless it is specifically excluded.

# *Property Conditions*

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable:

   a) to the insured for more than the insured's interest.

   b) for more than the limit of liability.

2. **Deductible.** The deductible amount shown on the Declarations or endorsements attached to this policy is the amount of loss paid by the insured. We pay for covered loss above the deductible amount.

3. **Your Duties after Loss.** In case of loss, **you** must:

   a) give immediate notice to **us** or **our** agent; and also to the police in case of theft. In case of loss under the credit card coverage, also notify the credit card (Electronic Fund Transfer Card) company. If loss is caused by or results from the peril of hail, loss must be reported to **us** or **our** agent within 6 months of the loss event.

   b) protect the property from further damage. **You** must make repairs required to protect the property and keep a record of repair expenses.

   c) as often as we reasonably require:

      (1) show **us** the damaged property; and

      (2) provide records and documents we request and permit us to make copies.

      (3) submit to examinations under oath and sign same. At **your** or **our** request, the exams will be conducted separately and not in the presence of any other persons except legal representation.

   d) submit to **us**, within 60 days after we request, **your** signed, sworn proof of loss which sets forth, to the best of **your** knowledge and belief:

      (1) the time and cause of loss.

      (2) interest of the insured and all others in the property involved and all liens on the property.

      (3) other insurance that may cover the loss.

      (4) changes in title or occupancy of the property during the term of the policy.

      (5) specifications of any damaged property and detailed estimates for repair of damage.

      (6) a list of damaged personal property showing in detail the quantity, description, **actual cash value**, and amount of loss. Attach all bills and receipts that support the figures.

      (7) receipts for additional living expenses and records supporting the fair rental value loss.

      (8) evidence or affidavit supporting a claim under the Credit Card, Electronic Fund Transfer Card, Access Device and Forgery Coverage. It should state the amount and cause of loss.

4. **Loss Settlement.** Covered losses will be settled, up to the applicable limit of liability, by **us** paying:

   a) **actual cash value** at the time of loss, the amount not to exceed **actual cash value**, needed to repair or replace:

      (1) personal property and structures that are not buildings;

      (2) carpeting (including wall-to-wall) and cloth awnings;

      (3) outdoor antennas, whether or not attached to the building;

      (4) home appliances, unless built in as a part of the dwelling.

  b) the cost to repair or replace without deduction for depreciation for buildings in Coverage A or B based on equivalent construction and use on the same premises except:

      (1) we will pay no more than the **actual cash value** of the damage until the repair or replacement is made when the cost to repair or replace the damage is more than $1,000 or more than 5 percent of the amount of insurance in this policy on the building, whichever is less.

      (2) when you claim loss or damage to buildings on an **actual cash value** basis. **You** may make claim within 180 days after the loss for any added loss based on the cost to repair or replace.

      (3) If **you** choose not to repair or replace, we will pay only the **actual cash value** of the damaged building, not to exceed the applicable limit of liability.

5. **Loss Payment. We** will pay all losses as outlined in the above Loss Settlement Condition 4. subject to the following:

  a) In case of loss to a pair or set, we may elect to:

      (1) repair or replace a part to restore the pair or set to its value before the loss; or

      (2) pay the difference between **actual cash value** of the property before and after the loss.

  b) At **our** option, we may repair or replace any part of the damaged property with equivalent property, providing we give **you** written notice within 30 days after receiving **your** signed, sworn proof of loss.

  c) We will pay **you** unless some other person is named in this policy to receive payment. Payment will be made within 60 days after we receive **your** proof of loss and:

      (1) reach agreement with **you**; or

      (2) there is an entry of a final judgment; or

      (3) there is a filing of an appraisal award with **us**.

  d) After we have paid for a loss by theft or disappearance of covered property, we have the right to all or part of any recovered property. **You** must protect these rights and inform us of any recovery. If **you** wish to retain the recovered property, **our** loss payment will be adjusted by the value of such property.

  e) After we have paid for a loss, we have the right to all or part of any salvageable property. We may permit **you** to keep the damaged property but we will reduce the amount of the loss paid to **you** by the value of the retained damaged property.

6. **Appraisal.** If **you** and we fail to agree on the amount of loss, either can demand that the amount be set by appraisal. If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will then select a competent, impartial umpire. If the two appraisers cannot agree on an umpire within 15 days, **you** or we can ask a judge of a court of record in the state where the residence premises is located to select a competent, impartial umpire.

The appraisers will then set the amount of loss. If the appraisers submit a written report of an agreement to **us**, the amount agreed upon will be the amount of the loss. If the appraisers fail to agree within a reasonable time, they will submit their differences to the umpire. Written agreement signed by any two of these three will set the amount of the loss. Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire

will be paid equally by you and us. Any fees for expert witnesses or attorneys will be paid by the party who hires them. Neither the umpire nor the appraisers will have a financial interest that is conditioned on the outcome of the specific matter for which they are called to serve.

This is not a provision providing for or requiring arbitration. The appraisers and umpire are only authorized to determine the **actual cash value,** replacement cost, or cost to repair the property that is the subject of the claim. They are not authorized to determine coverage, exclusions, conditions, forfeiture provisions, conditions precedent, or any other contractual issues that may exist between **you and us.** The appraisal award cannot be used by either **you or us** in any proceeding concerning coverage, exclusions, forfeiture provisions, conditions precedent, or other contractual issues. However, once contractual liability is admitted or determined, the appraisal award is binding upon **you and us.** This appraisal process and authority granted to the appraisers and the umpire can only be expanded or modified by written mutual consent signed by **you and us.**

7. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

8. **Suit Against Us.** No action can be brought against us unless there has been full compliance with the policy provisions. Any action must be started within one year after the date of loss or damage.

9. **Abandonment of Property.** We need not accept property abandoned by an **insured.**

10. **Mortgage Clause.** The word "mortgagee" includes trustee. If a mortgagee is named in this policy, a loss payable under Coverage A or B will be paid to the mortgagee and **you,** as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order or precedence of the mortgages. If we deny **your** claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

    a) notifies **us** of change in ownership, occupancy, or substantial change in risk of which the mortgagee is aware.

    b) pays premium due under this policy on **our** demand, if **you** neglected to pay the premium.

    c) submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Your Duties after Loss, Loss Payment, Appraisal, and Suit Against Us apply to the mortgagee.

    If we cancel the policy, we will notify the mortgagee at least 10 days before the cancellation takes effect. If we pay the mortgagee for loss and deny payment to **you:**

    a) we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

    b) at our option, we may pay to the mortgagee the whole principal on the mortgage plus accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

11. **No Benefit to Bailee.** This insurance does not benefit a person or organization that is caring for or handling **your** property for a fee.

12. **Glass Replacement.** We will replace covered glass using safety glazing materials when required by ordinance or law.



# Section II
# Liability Coverages

## ADDITIONAL DEFINITIONS APPLICABLE TO THESE COVERAGES

For purposes of these coverages only:

1. "BODILY INJURY" means bodily harm, including resulting care, sickness or disease, loss of services or death. **Bodily injury** does not include emotional distress, mental anguish, humiliation, mental distress or injury, or any similar injury unless the direct result of bodily harm.

2. "PROPERTY DAMAGE" means physical injury to or destruction of tangible property. This includes its resulting loss of use.

3. "RESIDENCE EMPLOYEE" means an employee of an **insured** who performs duties in connection with maintenance or use of the **residence premises.** This includes household or domestic services or similar duties elsewhere not in connection with the **business of an insured.**

4. "OCCURRENCE" means **bodily injury or property damage** resulting from an accident, including continuous or repeated exposure to the same general condition. The **occurrence** must be during the policy period.

5. "INSURED" means **you** and the following persons if residents of **your** household at the **residence premises:**
   a) **your** relatives;
   b) any other person under age 21 and in the care of **you** or **your** relatives;
   c) a person or entity legally responsible for animals or covered watercraft that are either owned by or in the custody of an **insured.** A person or entity using or having custody of these animals or watercraft in the course of **business,** or without permission of the owner, is not an **insured.**
   d) any person operating, utilizing, or maintaining a covered vehicle while engaged in **your** employment or that of an **insured.**

# Coverage Agreements

## COVERAGE E — PERSONAL LIABILITY

**We** will pay damages an **insured** is legally obligated to pay due to an **occurrence** resulting from negligent personal acts or negligence arising out of the ownership, maintenance or use of real or personal property. **We** will provide a defense at **our** expense by counsel of **our** choice. **We** may investigate and settle any claim or suit. **Our** duty to defend a claim or suit ends when the amount **we** pay for damages equals **our** limit of liability.

This coverage is excess over other valid and collectible insurance. It does not apply to insurance written as excess over the applicable limits of liability.

## COVERAGE F — MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical and funeral expenses incurred within three years after an accident causing bodily injury. This coverage does not apply to you. It does not apply to regular residents of **your** household. It does apply to **residence employees.** Payment under this coverage is not an admission of our or an **insured's** liability. This coverage applies as follows:

1. to a person on the **insured location** with consent of an **insured.**

2. to a person off the **insured location,** if the **bodily injury:**
   a) arises out of a condition in the **insured location.**
   b) is caused by the activities of an **insured.**
   c) is caused by a **residence employee** of an **insured.**
   d) is caused by an animal owned by or in the care of an **insured.**

# *Additional Liability Coverages*

We will pay the following in addition to the limits of liability.  These additional coverages are not subject to the Section II Liability Exclusions.

1. **Claims Expenses.** We will pay:
   a) expenses we incur and costs taxed against an **insured** in a legal action we defend.
   b) premiums on bonds required in a suit we defend. This does not include bond amounts greater than the Coverage E limit of liability. We are not obligated to apply for or furnish a bond.
   c) reasonable expenses incurred by an **insured** at our request. This includes actual loss of earnings (but not loss of other income) up to $100 per day for assisting **us** in the defense of a claim or suit.
   d) post-judgment interest. This must accrue after entry of the judgment. It must accrue before we pay or deposit in court that part of the judgment which does not exceed the coverage that applies.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an **insured** for bodily injury covered under this policy. We will not pay for first aid to **you** or any other **insured.**

3. **Damage to Property of Others.** We will pay for property damage to property of others caused by an **insured** regardless of legal liability. We will pay up to $1,000 per **occurrence,** but not more than the smallest of the replacement cost or the cost to repair the damaged property. We will not pay for property damage:
   a) to property covered under Section I.
   b) caused intentionally by an **insured** who is age 13 or older.
   c) to property owned by or rented to an **insured,** a tenant of an **insured,** or a resident in your household.
   d) arising out of:
      (1) **business** pursuits.
      (2) an act or omission in connection with a premises owned, rented, or controlled by an **insured,** other than an **insured location.**
      (3) the ownership, maintenance or use of a **motor vehicle, aircraft,** or **watercraft.**

4. **Accidental Death Benefits.** We will pay $500 ($2,000 if an adult) to the estate of the deceased for accidental loss of life of an **insured**. Death must be solely caused by accident. The adult benefit applies to an **insured** age 18 or older. Accident means an event which is sudden, unforeseen, and unintended. Death must be within 90 days of the accident. It must result directly from **bodily injury** suffered on the **residence premises**. Death must be independent of other causes. Coverage ends for an **insured** on the nearest policy renewal date to such **insured's** 65th birthday. We will not pay where death results directly or indirectly, wholly or in part, from any of the following causes:

a) disease, bodily or mental illness;

b) medical or surgical treatment for disease, bodily or mental illness;

c) infection unless it results from visible wounds. It must be the result of an accident which happened at the **residence premises**;

d) suicide, whether the deceased was sane or insane;

e) sensitivity to drugs or an overdose of drugs;

f) taking poison or inhaling gas, voluntarily;

g) war or an act of war, declared or undeclared. It does not matter whether the **insured** is in military service or not.

# *Liability Exclusions*

(Section II)

1. Coverage E–Personal Liability and Coverage F–Medical Payments to Others do not apply to bodily injury or property damage:

   a) caused intentionally by or at the direction of an **insured**, including willful acts the result of which the **insured** knows or ought to know will follow from the **insured's** conduct.

   This exclusion 1.a) does not apply to:

   (1) corporate punishment of pupils.

   (2) **bodily injury** or **property damage** caused by an **insured** trying to protect person or property.

   b) caused by or resulting from an act or omission which is criminal in nature and committed by an **insured**.

   This exclusion 1.b) applies regardless of whether the **insured** is actually charged with, or convicted of a crime.

   c) arising out of **business** pursuits of an **insured**.

   This exclusion 1.c) does not apply to:

   (1) activities normally considered non-**business**.

   (2) occasional or part time self-employed **business** pursuits of an **insured** under age 19 years old (age 23 if a full-time student).

   (3) an office, school, studio, barber or beauty shop on the **residence premises** if noted on the Declarations.

   (4) home care services provided by or at the direction of an **insured** on or from the **residence premises** if noted on the Declarations.

   d) arising out of the rental or holding for rental of any part of any premises by an **insured**. Exceptions, if any, are noted on the Declarations.

   This exclusion 1.d) does not apply to the rental or holding for rental of part of **your residence premises:**

   (1) occasionally for the exclusive use as a residence.

   (2) unless intended as a residence by more than two roomers or boarders.

   (3) as a private garage.

   e) arising out of any professional liability except teaching.

   f) arising out of premises owned or rented to an **insured** but not an **insured location**.

   This exclusion 1.f) does not apply to bodily injury to any **residence employee** arising out of and in the course of employment by an **insured**.

   g) arising out of the ownership, maintenance or use of, or loading or unloading of; entrustment or the negligent supervision by an **insured** of; or statutorily imposed liability on an **insured** related to the use of:

   (1) an aircraft.

   (2) a **motor vehicle** or all other motorized land conveyance owned by or operated by, or rented or loaned to an **insured**.

H1

This exclusion 1.g)(2) does not apply to:

    (a) a vehicle owned by an **insured** and designed for recreation off public roads while on an **insured location.**

    (b) a motorized golf cart while being operated to or from, or on the premises of a golf course.

    (c) a vehicle not subject to motor vehicle registration which is:

        i)  used to service an **insured's** residence; or

        ii)  designed for assisting the handicapped.

    (d) a vehicle in dead storage on an **insured location.** Dead storage means physically prepared for long term storage.

    (e) a boat, camp, home or utility trailer not being towed or carried on a vehicle defined in general Definition 6.a).

    (f) **bodily injury** to any **residence employee** arising out of and in the course of employment by an **insured.**

  (3) a watercraft owned or operated by, or rented or loaned to an **insured:**

    (a) if the watercraft is a personal watercraft powered by an internal combustion engine and utilizing a water jet pump or has inboard, inboard-outdrive or outboard motor power of more than 50 horsepower.

    (b) if it is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length.

    (c) while rented to others.

    (d) while being used to carry persons or property for a fee.

    (e) while being used without an **insured's** permission.

    (f) while being used in an official race or speed test. This exclusion does not apply to sailboats.

    (g) if it is an airboat, air cushion or similar type watercraft.

This exclusion 1.g)(3) does not apply:

  (1) while the watercraft is stored.

  (2) when an **insured** rents or borrows a nonowned outboard motor boat for eight (8) or less consecutive days.

  (3) to **bodily injury** to any **residence employee** arising out of and in the course of employment by an **insured.**

h) caused by war or warlike acts, including insurrection, rebellion or revolution. Discharge of a nuclear weapon is a warlike act, even if accidental.

i) resulting from an **insured** transmitting a communicable disease.

j) arising from the ingestion, inhalation or absorption of lead or lead compounds.

k) arising out of any interior or exterior presence, use, discharge, dispersal, release, migration, seepage or escape of:

  (1) solid, liquid, gaseous, or thermal irritants or contaminants, including smoke (except smoke arising solely from a hostile fire or the sudden and accidental discharge from a fireplace or furnace), vapors, soot, fumes, acids, alkalis, toxic chemicals and wastes, toxic liquids or toxic gases;

(2) fuel oil and other petroleum products; or

(3) any other waste materials or other irritants, contaminants or pollutants.

This exclusion 1.k) does not apply to **bodily injury** arising out of routine lawn and garden care of **an insured location.**

l) resulting from acts or omissions relating directly or indirectly to sexual molestation, physical or mental abuse, harassment, including sexual harassment, whether actual, alleged or threatened.

m) resulting from the use, sale, manufacture, delivery, transfer or possession by a person of a controlled substance(s) as defined by Federal Food and Drug Law (21 U.S.C.A Sections 811 and 812). Controlled substances include but are not limited to: cocaine; LSD; marijuana; and all narcotic drugs.

This exclusion 1.m) does not apply to the legitimate use of prescription drugs by a person following orders of a licensed physician.

n) **bodily injury** to a person eligible to receive any benefits required to be provided or voluntarily provided by any **insured** under:

(1) an workers' compensation;

(2) an unemployment compensation;

(3) a non-occupational or occupational disease;

(4) a disability benefits;

or any similar law.

o) caused by any of the following animals owned by or in the care of an **insured**:

(1) the following types of pure bred dogs or a mix breed including one of these types:

(a) American Staffordshire Terriers, American Pit Bull Terriers, or Staffordshire Bull Terriers, all commonly known as Pit Bulls;

(b) Doberman Pinschers;

(c) Rottweilers;

(d) Chow Chows; or

(e) Presa Canarios;

(2) wolf hybrids;

(3) dogs that have been trained to attack persons, property or other animals; or dogs that have been trained to guard persons or property;

(4) any dog, used in any manner, as a fighting dog or bred specifically for fighting;

(5) any dog with a prior history of:

(a) causing **bodily injury** to a person; or

(b) attacking or biting another animal;

established through insurance claims records, or through the records of local public safety, law enforcement or other similar regulatory agency.

p) arising out of **biological deterioration or damage.**

2. Coverage **E** — Personal Liability does not apply to:

a) liability under any loss assessment contract or agreement unless optional loss assessment coverage is purchased; and then only up to the limit of liability shown for that optional coverage.

b) liability assumed under any unwritten contract or agreement, or by contract or agreement in connection with any **business of an insured.**

c) **property damage** to property owned, produced or distributed by an **insured.**

    d)  **property damage** to property rented to, occupied or used by, or in the care of an **insured**.

       This exclusion 2.d) does not apply to **property damage:**

       (1)  caused by fire, smoke, or explosion; or

       (2)  to house furnishings or premises rented to, occupied or used by or in the care of an **insured** for which the **insured** is legally liable.

    e)  **bodily injury** or **property damage** for which an **insured** under this policy is also an **insured** under a nuclear energy liability policy; or would be an **insured** but for its termination upon exhaustion of its limit of liability.

    f)  **bodily injury** to an **insured** as defined in Section II — Liability Definitions 5.a) and 5.b).

3.  Coverage F — Medical Payments to Others does not apply to **bodily injury:**

    a)  to a **residence employee** if it occurs off the **insured location**. It does apply if the **bodily injury** arises out of the **residence employee's** employment by an **insured**.

    b)  from a nuclear reaction, radiation or radioactive contamination, or a consequence of any of these. It does not matter that these are controlled or uncontrolled.

H4

# *Liability Conditions*

(Section II)

1. **Limits of Liability.**  Our total liability under Coverage E for all damages resulting from one occurrence will not exceed the limit for Coverage E shown on the Declarations. This is true regardless of the number of **insureds**, claims made or persons **injured**.

   Our total liability under Coverage F for all medical expense for **bodily injury** to one person resulting from one accident will not exceed the limit for Coverage F shown on the Declarations.

2. **Severability of Insurance.** This insurance applies separately to each **insured**. This condition does not increase our limit of liability for one **occurrence**.

3. **Duties after Loss.** In case of a loss, **you** must perform the following duties. **You** must cooperate with **us** in seeing that these duties are performed.

   a) give notice to **us** or **our** agent as soon as practicable setting forth:

      (1) identity of the policy and **insured**.

      (2) time, place, and facts of the accident or **occurrence**.

      (3) names and addresses of the claimants and witnesses.

   b) immediately forward to **us** every document relating to the accident or **occurrence**.

   c) at **our** request, assist in:

      (1) making settlement.

      (2) enforcing a right of contribution or indemnity against a person or entity who may be liable to an **insured**.

      (3) conducting suits, and attending hearings and trials.

      (4) giving evidence and asking witnesses to attend.

   d) under the coverage — Damage to Property of Others:

      (1) submit to **us**, within 60 days after the loss, a sworn proof of loss; and

      (2) exhibit the damaged property, if within the **insured's** control.

   e) the insured shall not, except at the **insured's** own cost, voluntarily make a payment, assume an obligation, or incur an expense other than for first aid to others at the time of the **bodily injury**.

   f) Under the coverage — Accidental Death Benefits:

      (1) **you** agree to authorize **us** to receive medical reports and copies of supporting records;

      (2) **we** have the right and opportunity to make an autopsy where not forbidden by law.

4. **Duties of an Injured Person — Coverage F — Medical Payments to Others.**  The injured person or someone on behalf of the injured person will:

   a) give **us** written proof of claim, under oath if required, as soon as possible.

   b) authorize **us** to obtain copies of medical reports and records. The injured person will submit to physical examination by a physician **we** select. This may be as often as **we** require with good reason.

5. **Suit Against Us.** No action can be brought against **us** unless there has been full compliance with the policy provisions. No one has a right to join **us** as a party to an action against an **insured**. No action with respect to Coverage E can be brought against **us** until the obligation of the insured has been determined by final judgment or agreement signed by **us**.

6. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an **insured** will not relieve **us** of **our** obligations under this policy.

# *Policy Coverage Options*

The following options apply only if they are indicated on the Declarations. They are subject to all provisions of this policy except as modified herein.

**Option A.**   **Jewelry.** The coverage for jewelry, watches and furs is amended as follows:

We will pay for accidental direct physical loss except that caused by:

1. wear and tear or mechanical breakdown.
2. gradual deterioration or inherent vice.
3. insects or vermin.
4. losses excluded under Section I — Property Exclusions that apply to personal property.

**Option B.**   **Guns.** The coverage for guns, including accessories is amended as follows:

We will pay for accidental direct physical loss except that caused by:

1. wear and tear, mechanical breakdown or gradual deterioration.
2. insects or vermin.
3. refinishing, renovating or repairing.
4. dampness or temperature extremes, rust, fouling or explosion.
5. inherent defect or faulty manufacture.
6. breakage, marring, scratching, tearing, or denting; unless caused by fire, thieves or vehicular accident.
7. losses excluded under Section I — Property Exclusions that apply to personal property.

**Option C.**   **Cameras.** The coverage for cameras (film, digital or video), including accessories, is amended as follows:

We will pay for accidental direct physical loss except that caused by:

1. wear and tear, mechanical breakdown or gradual deterioration.
2. renovating or repairing, rust, dampness or temperature extremes.
3. inherent defect or faulty manufacture, insect or vermin.
4. breakage, marring, scratching, tearing, or denting; unless caused by fire, thieves or vehicular accident.
5. losses excluded under Section I — Property Exclusions that apply to personal property.

The limits of liability for property covered by **Options A, B or C** are amended as follows:

The option's limit of liability is shown on the Declarations. Other than loss by theft, it is in addition to the Coverage C — Personal Property limit of liability for losses by a Coverage C — Personal Property Perils Insured Against. It is the total limit, with a $1,000 maximum for any one item, for loss by:

1. theft; or
2. a covered peril other than the Coverage C — Personal Property Perils Insured Against.

*Policy Coverage Options* _____

**Option D.**  **Silverware.** The coverage and limits of liability for silverware, silver-plated ware, goldware, gold-plated ware and pewterware is amended as follows:

We will pay for accidental direct physical loss except that caused by:

1.  wear and tear, mechanical breakdown or gradual deterioration.

2.  renovating or repairing, rust, dampness or temperature extremes.

3.  inherent defect or faulty manufacture, insect or vermin.

4.  breakage, marring, scratching, or denting; unless caused by fire, thieves or vehicular accident.

5.  losses excluded under Section I — Property Exclusions that apply to personal property.

This option's limit of liability is shown on the Declarations. Other than loss by theft, it is in addition to the Coverage C — Personal Property limit of liability for losses by a Coverage C — Personal Property Perils Insured Against. It is the total limit for loss by:

1.  theft; or

2.  a covered peril other than the Coverage C — Personal Property Perils Insured Against.

**Option E.**  **Tools.** The special limit of liability applying to tools is increased to the amount shown on the Declarations.

**Option F.**  **Money.** The special limit of liability on money, bank notes, bullion, gold (other than goldware), silver (other than silverware), platinum, coins, stored value cards, smart cards, gift certificates and medals is increased to the amount shown on the Declarations.

**Option G.**  **Securities.** The special limit of liability on securities, accounts, bills, deeds, documents, evidences of debt, letters of credit, notes other than bank notes, passports, stamps and tickets is increased to the amount shown on the Declarations.

**Option H.**  **Computers.** The special limit of liability on computers, including hardware and software accessories is increased to the amount shown on the Declarations.

**Option I.**  **Business Property.** The special limit of liability on **business property** is increased to the amount shown on the Declarations. It includes up to $250 of coverage for **business property** off the **residence premises.**

**Option J.**  **Extended Replacement Cost Coverage.** Option J does not increase the policy's limit of liability.

1.  Loss to the following property shall be settled at replacement cost or the full cost to repair without deduction for depreciation:

    a)  property covered under Coverage C — Personal Property.

    b)  outdoor antennas, carpeting (including wall-to-wall), home appliances, and awnings.

    "Replacement cost" means the cost, at the time of loss, of a new article identical to the one damaged or stolen. When the identical article is no longer available, **replacement cost** shall mean the cost of a new article similar to that damaged or stolen. It must be of comparable quality and usefulness.

    Our liability for loss under this coverage shall be the lesser of:

    a)  **replacement cost** at the time of loss;

    b)  full cost of repair;

K2

    c) any special limits of liability described in this policy or attached by endorsement; or

    d) our cost to repair or replace any part of the damaged or stolen property with equivalent property.

    We will not pay more than the **actual cash value** of the damaged or stolen property until it has been repaired or replaced.

2. **You** may elect not to repair or replace some or all of the damaged or stolen property. In this event, settlement will be based on the smallest of the repair cost, **replacement cost**, any special limit of liability that applies or the **actual cash value** of those items. If **you** later decide to repair or replace those items, **you** may make an additional claim within 180 days after the loss for any difference between the amount paid and the amount payable if repaired or replaced. The actual repair or replacement of the property need not be completed within the 180 days, but payment will not be made until proof of repair or replacement is provided to **us**.

3. This coverage does not apply to:

    a) manuscripts, antiques or fine arts which by their inherent nature cannot be replaced with new articles.

    b) memorabilia, souvenirs, collectors' items, and other items whose age and history contribute substantially to their value.

    c) property not maintained in good or workable order.

    d) property which is obsolete or useless to **you** at the time of loss.

    The **actual cash value** provisions of this policy apply to the preceding items 3.a) through 3.d).

**Option K.** **Replacement Cost Plus (Dwelling) (Increased Coverage A Limit).** When a loss covered by this policy occurs to the dwelling in which **you** live, located at the **residence premises**, we will settle losses, subject to applicable deductibles, according to the policy provisions.

If the amount actually and necessarily spent to repair or replace the dwelling is more than the Coverage A — Dwelling Limit of Liability, we will pay up to a maximum of an additional 20% of the Coverage A limit for the additional cost. This additional amount applies only to the dwelling insured under this policy identified as the **residence premises** on the Declarations. This coverage does not increase or affect any other coverage limit or limit of liability in this policy. This additional payment is subject to the following provisions:

**SPECIAL CONDITIONS:**

**You** must:

1. insure the dwelling in which **you** live, located at the **residence premises**, to 100% of the cost to repair or replace it; and

2. accept the annual adjustment in the Coverage A — Dwelling limit of liability due to Inflation Protection Coverage and pay the premium charged; and

3. notify **us** within 90 days of the start of any physical improvements or additions which increase the replacement cost value of **your** dwelling by $5,000 or more and pay any additional premium due.

**You** must comply with these special conditions or we will pay no more than the policy limit in effect on the date of loss, less applicable deductibles.

### ORDINANCE OR LAW EXCLUSION

The additional amount provided by this option does not cover any increased cost resulting from enforcement of any ordinance or law regulating the construction, use or repair of any property, or requiring the tearing down of any property, including the cost of removing such debris.

**Option L.**  **Protective Device Credit.** For a premium credit, we acknowledge the installation of qualified protection devices on the **residence premises.**

**You** agree to:

1.  maintain these devices in working order; and

2.  notify **us** promptly, of any changes made in the devices or if they are removed.

**Option M.**  **Personal Injury Coverage** under **Coverage E — Personal Liability,** the definition of **bodily injury** is amended to include personal injury.

**Personal Injury** means injury as a result of:

1.  false arrest, false imprisonment, wrongful eviction, or wrongful entry;

2.  wrongful detention, malicious prosecution, or humiliation;

3.  libel, slander, defamation of character; or

4.  invasion of rights of privacy.

Section II — Liability Exclusions do not apply to **personal injury. Personal injury** coverage does not apply to:

1.  liability assumed by an **insured** under a contract or agreement;

2.  injury caused by violation of a penal law or ordinance if committed by or with the knowledge or consent of an **insured;**

3.  injury sustained by a person as a result of an offense directly or indirectly related to that person's employment by the **insured;**

4.  injury arising out of or in connection with **business** pursuits of an **insured;**

5.  injury arising out of any professional liability;

6.  injury resulting from an **insured** transmitting a communicable disease, including injury arising from the possibility of such transmission;

7.  civic or public activities performed for pay, other than reimbursement of expenses, by an **insured;** or

8.  injury to an **insured** as defined in general Definitions 4.a) and 4.b).

**Option N.**  **Loss Assessment Coverage.**

**We** agree to pay **your** share of an assessment charged against all members of the **Association. "Association"** means the management body of the property owners. They must have common property interest with **you.** The common property must be part of the housing development where **you** live, as shown on the Declarations. **We** will pay up to the limit, shown for this option on the Declarations, in effect at the time of the loss which results in an assessment.

The assessment must be the result of:

1.  a direct loss to property collectively owned by the **Association.** It must be caused by a peril covered under Section I of this policy;

2. an event of the type covered by Section II of this policy; or

3. damages the **Association** is legally obligated to pay due to **personal injury** as a result of:

   a) false arrest, false imprisonment, wrongful eviction, or wrongful entry;

   b) wrongful detention, malicious prosecution, misrepresentation, or humiliation;

   c) libel, slander, defamation of character; or

   d) invasion of rights of privacy.

This coverage is excess over other valid and collectible insurance covering the **Association**. Loss under subparagraph 1. is subject to the Section I deductible shown on the Declarations.

**Option O.  Building Ordinance or Law Coverage.**

We agree to cover the increased cost resulting from any ordinance or law regulating the:

1. construction;

2. repair;

3. renovation;

4. remodeling; or

5. demolition;

of covered building structures damaged by a Peril Insured Against.

**LIMIT OF PAYMENT**

The amount of ordinance or law coverage is shown on the Declarations. It is a percentage of the Coverage A — Limit of Liability shown on the Declarations at the time of loss. This is additional coverage.

The damaged or destroyed building structure must be repaired or replaced at the **residence premises**.

**SPECIAL EXCLUSIONS**

We will not pay costs:

1. required to replace, repair, regrade, remove, stabilize, change the contour of, or otherwise alter land, unless under or immediately surrounding the damaged building structure;

2. resulting from the enforcement of any ordinance or law involving construction, repair, remodeling or demolition of that portion of the undamaged building structure.

   However, this exclusion does not apply if the total damage to the covered building structure is more than 50% of the building's replacement cost, less any ordinance or law expenses, at the time of the loss.

**Option P.  Limited Water Back up of Sewers or Drains Coverage.**  We will pay up to a maximum of $5,000 for all damage to:

1. the Coverage A — Dwelling; and

2. the following personal property:

   a) clothes washers and dryers;

   b) food freezers and the food in them;

   c) refrigerators;

d)  ranges;

e)  portable dishwashers; and

f)  dehumidifiers;

caused by or resulting from water or water-borne material which:

a)  backs up through sewers or drains from outside the dwelling's plumbing system; or

b)  overflows from a sump pump, sump pump well or other system designed to remove subsurface water or water-borne material from the foundation area.

### EXCLUSIONS

We do not cover:

1.  other personal property not specified above;

2.  loss caused by the negligence of an insured; or

3.  if the loss occurs or is in progress within the first five (5) days of the inception of this coverage unless added at renewal.

All other damage resulting from water or water-borne material not mentioned above is excluded as stated in Section I — Property Exclusion 1.b).

### DEDUCTIBLE

We will pay for that part of the covered loss that is above the Section I — Deductible shown on the Declarations, or $500, whichever is greater.

All other provisions of this policy, including Section I — Deductible, apply.

**Option Q. Earthquake and Volcanic Eruption Coverage.**   We insure for direct physical loss to property covered under Section I — Property Coverages caused by earthquake or volcanic eruption.  Volcanic eruption means:

1.  eruption;

2.  explosion; or

3.  discharge;

from a volcano.

One or more earthquake shocks or volcanic eruptions that occur within a 72-hour period will constitute a single earthquake or volcanic eruption.

This coverage does not increase the limits of liability stated in the policy.

### DEDUCTIBLE

The earthquake and volcanic eruption deductibles are shown on the Declarations.   It replaces any other deductible provision in this policy for covered earthquake and volcanic eruption loss.

We will pay only that part of the loss over the earthquake deductible percentage shown on the Declarations. The percent deductible applies separately to each coverage limit and applies separately to loss under each Section I coverage. This includes Building Additions and Alterations Coverage if included in the policy. The deductible amount will not be less than the earthquake dollar deductible on the Declarations for any one loss.

### SPECIAL EXCLUSIONS

We do not cover loss resulting directly or indirectly from flood of any nature or tidal wave, whether caused by, resulting from, contributed to, or aggravated by earthquake or volcanic eruption.

**Option R.  Broad Water Back up of Sewers or Drains Coverage.** We will pay up to the limit of liability, shown on the Declarations for this option, at the time of loss, for direct damage to covered property caused by or resulting from water or water-borne material which:

1. backs up through sewers or drains from outside the dwelling's plumbing system; or

2. overflows from a sump pump, sump pump well or other system designed to remove subsurface water or water-borne material from the **foundation area.**

This is the most we will pay for all covered property under Coverage A — Dwelling, Coverage B — Other Structures and Coverage C — Personal Property.

### EXCLUSIONS

We do not cover:

1. loss caused by the negligence of an **insured**; or

2. if the loss occurs or is in progress within the first five days of the inception of this coverage unless added at renewal.

All other damage resulting from water or water-borne material not mentioned above is excluded as stated in Section I — Property Exclusion 1.b).

### DEDUCTIBLE

We will pay for that part of the covered loss that is above the Section I — Deductible shown on the Declarations or $500, whichever is greater.

All other provisions of this policy, including Section I — Deductible, apply.

 *General Policy Conditions*

## 1. HOW YOUR POLICY MAY BE CHANGED

a) Any part of this policy, which may be in conflict with statutes of the state in which this policy is issued, is hereby amended to conform.

b) Any insured will automatically have the benefit of any broadening of coverage in this policy, as of the effective date of the change, provided it does not require more premium.

c) A waiver or change of a part of this policy must be in writing by us to be valid. Our request for an appraisal or examination does not waive our rights.

d) The premium for the coverage provided by this policy and attached endorsements is based on information in our possession. Any change or correction in this information will allow us to make an adjustment of the premium.

## 2. CONCEALMENT OR FRAUD

a) This policy is void as to all insureds if you or any other insured has intentionally misrepresented any material fact or circumstance which would have caused us not to issue or renew this policy.

b) This policy does not provide coverage for all insureds if you or any other insured, either before or after a loss, has:

    (1) intentionally concealed or misrepresented any material fact or circumstance; or

    (2) committed any fraud or made false statements relating to such loss.

## 3. RENEWAL

This policy is written for a specific policy period as shown on the Declarations. We will renew it for successive policy periods subject to the following conditions:

a) Renewal will be in accordance with the policy forms, rules, rates and rating plan in use by us at the time.

b) All premiums, premium installment payments and fees must be paid when due.

c) Prior to the expiration of a policy period for which premium has been paid, we will mail a notice to the named insured for the premium required to renew or maintain the policy in effect. We will mail this notice to the address last known to us.

d) You agree to an interior inspection of your home by one of our representatives to determine your continued eligibility. Such inspection will not be performed more than once a year with prior advance notice. Failure to allow an interior inspection in accordance with these terms may result in nonrenewal of your policy.

## 4. NON-RENEWAL

a) At the end of each policy period, we will have the right to refuse to renew this policy.

b) If we elect not to renew, we will mail written notice to the named insured, at the address shown in this policy, at least 30 days before the renewal date of this policy. Proof of mailing shall be proof of notice.

c) For nonpayment of renewal premium, coverage will terminate without notice at the end of the last policy period for which premium was paid.

## 5. CANCELLATION DURING POLICY PERIOD

Any named insured may cancel this policy at any time by returning it to us or by notifying us in writing of the future date cancellation is to take effect.

We may cancel this policy only for the reasons stated in this condition by notifying the named insured in writing of the date cancellation takes effect. This cancellation notice will be mailed to the named insured at the address shown in the policy. Proof of mailing will be proof of notice.

a) When premium has not been paid, whether payable to us or our agent or under a finance or credit plan, we may cancel at any time by giving notice at least 10 days before cancellation takes effect.

b) When this policy has been in effect 60 days or less and is not a renewal with us, we may cancel for any reason by giving notice at least 10 days before cancellation takes effect.

c) When this policy has been in effect for more than 60 days, or at any time if it is a renewal, we may cancel if:

   (1) there has been a material misrepresentation of fact which if known to us would have caused us not to issue this policy, or caused us to issue or renew this policy at a higher premium;

   (2) the risk has changed substantially since the policy was issued; or

   (3) the property or other interest has been transferred to another person, unless the transfer is permissible under the terms of this policy.

   This can be done by giving notice at least 30 days before cancellation takes effect.

d) When this policy is written for a period longer than one year, we may cancel for any reason at its anniversary by giving notice at least 30 days before cancellation takes effect.

When this policy is cancelled, the premium for the period from the date of cancellation to the premium payment date will be refunded. The return premium will be pro rata. If the return premium is not refunded with the notice of cancellation or when the policy is returned to us, we will refund it within a reasonable time after cancellation takes effect.

## 6. POLICY TRANSFER

This policy may be transferred to another only with our written consent.

## 7. SUBROGATION

a) When we have paid you for a loss covered under this policy and you also receive payment for the same loss from another person, entity or organization, the amount received will be held by you in trust for us and reimbursed to us to the extent of our payment.

b) An insured may, before loss occurs, waive in writing all rights of recovery against any person. The insured will provide us with proof of the waiver, when requested by us. If not waived, when we pay a loss, an insured's right to recover from someone else becomes ours up to the amount we paid. An insured must protect these rights and help us enforce them. This condition does not apply to "Medical Payments to Others" or the "Damage to Property of Others" protection.

## 8. DEATH

If you die, we continue to insure:

a) the legal representative of the deceased, only with respect to the premises and property of the deceased covered under this policy at the time of death;

b) a member of your household who is an insured at the time of death, but only while a resident of the residence premises.

c) with respect to your property, the person having proper custody of the property until appointment of a legal representative.

## 9. ADDITIONAL INSURED - NON OCCUPANT

An additional insured may be named in this policy. The additional insured's interest in the residence premises is protected under Coverage A and Coverage B. The additional insured is also protected under Coverage E for liability from the ownership, maintenance, or use of the residence premises. This provision does not increase the amount of insurance.

10. **OPTIONAL PAYMENT OF PREMIUM IN INSTALLMENTS**

The first named insured may pay the premium for this policy in installments, under the terms and conditions approved where required by the Department of Insurance. For each separate installment payment there is an installment premium payment charge. **Your** agent or sales representative can provide more information.

11. **NON-SUFFICIENT FUNDS CHARGE**

The company reserves the right to impose a fee for any premium payment that is unable to be processed due to non-sufficient funds, or if there are non-sufficient funds in an account that is being utilized for electronic funds transfer (EFT) payments.

12. **DIVIDENDS**

The first named insured is entitled to any dividends which are declared by the Board of Directors and are applicable to coverages in this policy.

## MUTUAL POLICY CONDITIONS

(Applicable only to policies issued by Nationwide Mutual Insurance Company — Nationwide Mutual Fire Insurance Company.)

If this policy is issued by Nationwide Mutual Insurance Company or Nationwide Mutual Fire Insurance Company, the first named insured is a member of the company issuing the policy while this or any other policy issued by one of these two companies is in force. While a member, the first named insured is entitled to one vote only — regardless of the number of policies issued to the first named insured — either in person or by proxy at meetings of members of said company.

The annual meeting of members of the Nationwide Mutual Insurance Company will be held at the Home Office at Columbus, Ohio, at 10 a.m. on the first Thursday of April. The annual meeting of members of the Nationwide Mutual Fire Insurance Company will be held at the Home Office at Columbus, Ohio, at 9:30 a.m. on the first Thursday in April. If the Board of Directors of either of the above companies should elect to change the time or place of meeting, that company will mail notice of the change to the first named insured at the address last known to it. The company will mail this notice at least 10 days in advance of the meeting date.

This policy is non-assessable, meaning the first named insured is not subject to any assessment beyond the premiums the above companies require for each policy term.

*General Policy Conditions* _____

**IN WITNESS WHEREOF:** Nationwide Mutual Insurance Company, Nationwide Mutual Fire Insurance Company, or Nationwide Property and Casualty Insurance Company, whichever is the issuing company as shown in the Declarations, has caused this policy to be signed by its President and Secretary, and countersigned as may be required by a duly authorized representative of the company.

*Patricia B. Hatler*

**Secretary**

**President**

Nationwide Mutual Insurance Company
Nationwide Mutual Fire Insurance Company

**President**

Nationwide Property and Casualty Insurance Company

Nationwide Mutual Insurance Company
Nationwide Mutual Fire Insurance Company
Nationwide Property and Casualty Insurance Company
Home Office: Columbus, Ohio  43215-2220

# EXHIBIT B



# Nationwide®
## *On Your Side*℠

P. O. Box 1324 * Cabot, AR 72023 * *

November 9, 2007

Delouise Randle
Lionell Shorter
6546 Rosebank Mt. Olive Road
Lexington, MS 39095

**OUR INSURED:** Delouise Randle
**OUR CLAIM NUMBER:** 63 41 HO 328825 06292007 01
**DATE OF LOSS:** 06-29-2007

RE:     Insured:Delouise Randle
        Claim Nos. 63 41 HO 328825 06292007 01 (Fire loss)
                   63 41 HO 328825 06172007 (Theft loss)
D/O/L:  6/29/2007 (Fire Loss) and 06/17/07 (Theft loss)

Dear Mrs. Randle and Mr. Shorter:

As you are aware, Nationwide Property and Casualty Insurance Company has conducted a thorough investigation into the above-referenced loss and has concluded the following:

1.      The fire loss was incendiary in nature, or intentionally set, and we believe was caused by you or at your direction.

2.      You have violated that provision of your insurance policy dealing with concealment or fraud.

3.      You have made material and knowing misrepresentations both as to the amount and extent of the personal property claim to have been damaged or destroyed in the fire loss in question.

4.      You have made misrepresentations in your application for insurance including, but not limited to, misrepresentations as to the true ownership of the property and misrepresentation as to loss history. In your application, you did not disclose that Lionel Shorter was an owner of the property and also did not disclose Mr. Shorter's prior insured loss history. The matters misrepresented increased the risk of loss to Nationwide Property and Casualty Insurance Company.

Tennessee law requires the following notice: It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.



**Nationwide®**
*On Your Side℠*

For the foregoing reasons, Nationwide Property and Casualty Insurance Company must deny your claim and can make no voluntary payment to you. In addition, due to the misrepresentation on the application for insurance, Nationwide Property and Casualty Insurance Company is voiding your policy from its inception and will refund all premium paid to you.

By stating the above-referenced reasons for denial of the claim and voiding of the policy of insurance, Nationwide Property and Casualty Insurance Company does not waive the right to assert any other defenses to payment of this claim which may come to its attention and specifically reserves the right to assert the same.

NATIONWIDE PROPERTY AND CASUALTY COMPANY

by: _____

Nationwide Property & Casualty Insurance Company
Mike Richardson
Claims Department
(501)605-8157

Tennessee law requires the following notice: It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.



STATE OF TENNESSEE
DEPARTMENT OF COMMERCE AND INSURANCE
500 JAMES ROBERTSON PARKWAY
Nashville, Tennessee 37243

7006 2760 0002 9676 2134

NATIONWIDE PROP & CASUALTY INS. CO.
C/O C T CORP
800 S. GAY STREET, STE 2021,
KNOXVILLE, TN 37929-9710
7006 2760 0002 9676 2134